Filed 9/30/20  In re V.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re V.C., a Person Coming Under the Juvenile Court Law. | B303433 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.C.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP06307A) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

The Los Angeles County Department of Children and Family Services (Department) petitioned for juvenile court dependency jurisdiction over two-year-old V.C. (Minor) after learning of domestic violence between his parents J.C. (Mother) and V.C. (Father).  The juvenile court sustained the petition, assumed jurisdiction over Minor, and removed him from his parents' custody.  We consider whether Mother's challenge to only one of multiple alleged grounds for dependency jurisdiction is justiciable notwithstanding other uncontested bases for jurisdiction.  We also decide whether the juvenile court's order removing Minor from his parents' custody is supported by substantial evidence and whether reversal is required because the Department and the juvenile court did not comply with notice provisions of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.

## I.  BACKGROUND

### A.  *September 2019 Domestic Violence Incident and Initial Department Investigation*

The Department began investigating Minor's welfare in September 2019, after learning of a domestic violence incident between Mother and Father.  They were drinking in a hotel bar—with Minor (asleep) at the bar with them—and began arguing.  The argument continued when the parents and Minor went back to their hotel room and, when Father tried to leave, the argument escalated into a physical conflict.  The police were called, and when officers arrived, they observed an injury to Father's lip and arrested Mother.

A Department social worker went to the hotel that same day and interviewed Father.  He said his relationship with

Mother ended over a year earlier and Mother now had primary custody of Minor, with visitation for Father. Mother brought Minor to the hotel for a visit, and when Father and Mother were in hotel lobby they both consumed about two beers. According to Father, Mother thought he was flirting with another woman and they began to argue. Father said he took Minor to his hotel suite located upstairs, put him in the bedroom, and then continued arguing with Mother in the living room. Father claimed he attempted to leave and Mother punched him in the face because she did not want him to go. Mother then called the police, and they arrested her because Father was the only one with a visible injury to his lip. Father claimed Minor slept through the fight between him and Mother.[1]

A few days later, a Department social worker interviewed Mother at her home. Mother said that on the day of the domestic violence episode, she and Father drank at the hotel bar (with Minor present) and began arguing because he thought she was flirting with someone else. They continued arguing after they went up to the hotel suite and put Minor in the bedroom. Father then moved to go to the bedroom to collect his things and leave, and Mother tried to stop him by holding the bedroom door closed while Father tried to open it. Mother claimed Father then punched her in the face, which caused her to let go of the door,

---

[1] Father admitted he had a criminal record, including an arrest for domestic violence against his ex-wife in 2008, but he claimed he doesn't hit women. The Department later obtained a criminal history printout for Father that revealed prior convictions for spousal battery, violation of a domestic violence protective order, willful cruelty to a child, and driving under the influence.

and the door then hit Father in the face.  She called the police and was arrested because there was a mark on Father's lip, although the charges were later dropped.

Mother also told the social worker that, in the past, Father had been "very violent and aggressive" and "pushed her and grabbed her many times."  She said Father was prone to getting particularly aggressive when he drinks.  According to Mother, she had called the police on numerous occasions in the past when Father showed up at her home drunk and harassed her.  Mother also unsuccessfully attempted to obtain restraining orders against Father three times in prior years.  Because of his substance abuse and aggression, she felt uncomfortable with him having unmonitored visitation with Minor, so she had been monitoring the visits herself.

The Department also interviewed the maternal grandparents.  The maternal grandmother stated Father several times had showed up to her home drunk and harassed Mother.  She believed Mother placed herself in a bad situation by monitoring Minor's visits with Father and wanted Mother to stop exposing Minor to domestic violence.  The maternal grandfather said he had called the police several times because of Father's violent behavior.

Both parents submitted to drug tests.  Father tested positive for marijuana and cocaine, while Mother's drug test was negative but with diluted results.

B.     *The Dependency Petition and Further Department Investigation*

The Department filed a dependency petition alleging Minor was a dependent child under Welfare and Institutions Code

4

section 300,[2] subdivision (a) (authorizing jurisdiction where there is a substantial risk a child will suffer serious physical harm inflicted nonaccidentally by the child's parent) and subdivision (b) (failure or inability to protect a child from a substantial risk of serious physical harm) based on Mother and Father's history of engaging in violent altercations. The petition specifically referenced the domestic violence incident at the hotel, where "[M]other and [F]ather struck one another, resulting in the [F]ather sustaining a swollen lip." In a separate count, the petition additionally alleged Father had a history of substance abuse, and was a current abuser of alcohol, marijuana, and cocaine, and Mother failed to protect Minor from Father's substance abuse.

At a detention hearing following filing of the petition, the juvenile court ordered Minor detained from his parents and released to the maternal grandparents, with the parents permitted monitored visitation, separately.

In advance of an upcoming jurisdiction hearing, the Department prepared an additional report summarizing interviews with the family. Mother told the Department that Father verbally abused her from the time Minor was six months old and physically assaulted her on five occasions by pushing and grabbing at her. Although Mother said domestic violence never occurred in Minor's immediate presence, she conceded Minor was either in the home or at the same location during the violent altercations. Father denied ever engaging in domestic violence with Mother, although he acknowledged they would have heated

---

[2] Undesignated statutory references that follow are to the Welfare and Institutions Code.

5

arguments when Minor was not present. As for the hotel incident, Father conceded that he had "embellished" when he told the police Mother hit him; Father said, in fact, the bedroom door had hit him accidentally while they were arguing.

C.     *Facts Pertaining to ICWA*

Both Mother and Father filed ICWA-020 Parental Notification of Indian Status forms. On her form, Mother indicated she had no Indian ancestry. Father, on the other hand, checked a box to indicate he "may have Indian ancestry" with the Yaqui tribe through Minors paternal grandfather, who was deceased. Father listed the paternal grandfather's name and date of birth. Neither parent checked boxes on the form indicating that Minor, Mother, Father, a grandparent, a great-grandparent, or "other lineal ancestors" is, was, or may be a member of a federally recognized Indian tribe.

At the initial detention hearing, the juvenile court informed the Department it needed to "follow up" regarding Father's claim of Indian heritage. The Department later reported it re-interviewed Father and he refused to provide any additional information about his ancestors and stated it was "only 'hearsay' that there [wa]s Yaqui Indian ancestry in his family."

D.     *The Combined Jurisdiction and Disposition Hearing*

At the combined jurisdiction and disposition hearing, the Department and Minor's counsel argued the dependency petition should be sustained in full. Mother asked to be dismissed from the allegations and be named a "non-offending" parent, arguing she had previously attempted to get restraining orders against Father and was monitoring Father's visits with Minor.

Alternatively, Mother argued the juvenile court should dismiss the domestic violence allegation because she was the one who had called the police and Minor was not present during the domestic violence because he was asleep in the bedroom.

The juvenile court sustained the petition as pled, finding true the domestic violence counts alleged against both parents under section 300, subdivisions (a) and (b) and the substance abuse count alleged against Father. Moving to disposition, the court asked if the parents were participating in any programs. Mother said she had enrolled in a parenting class and had attended one session; Father had not enrolled in any programs. The court ordered Minor removed from the parents, noting that it would be "premature" to return him to their custody because the parents were not enrolled in programs addressing the problems that gave rise to jurisdiction and Minor was quite young. Mother was ordered to participate in a domestic violence program support group for victims, a parenting program, and individual counseling to address all case issues. The juvenile court did not make any ICWA findings during the hearing.

## II. DISCUSSION

Mother does not contest the section 300, subdivision (b)(1) finding against her and the jurisdiction findings against Father are uncontested on appeal. There is accordingly no disputing dependency jurisdiction over Minor is proper regardless of the merits of Mother's challenge to the juvenile court's decision to sustain the dependency petition's allegation under section 300, subdivision (a). Under these circumstances, we decline to address Mother's challenge to the subdivision (a) finding. We do address the merits of Mother's challenge to the juvenile court's

7

order removing Minor from her custody, and we hold it is adequately supported by the evidence. Finally, as to ICWA, we are unpersuaded by Mother's contention that Father's statements concerning his possible Indian heritage triggered the need to give ICWA notice.

### A. *We Decline to Address the Merits of Mother's Challenge to the Section 300, Subdivision (a) Finding*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773, quoting *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451; see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.)

Mother challenges only the juvenile court's section 300, subdivision (a) finding. The juvenile court's findings that Minor is a child described by section 300, subdivision (b)—because of the domestic violence between the parents and because of Mother's failure or inability to protect Minor from Father's substance abuse—are uncontested. We therefore need not, and do not, consider the sufficiency of the evidence to support the juvenile court's jurisdiction finding under section 300, subdivision (a).[3]

---

[3]     Mother argues we have discretion to resolve her challenge to the section 300, subdivision (a) finding on the merits. That is

8

*B.      Substantial Evidence Supports the Juvenile Court's
Order Removing Minor from Mother's Custody*

Under section 361, subdivision (c)(1), a dependent child may not be removed from a parent unless the dependency court finds "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  (§ 361, subd. (c)(1).)  Section 361 thus allows removal of the child from the parent's custody at the disposition hearing where "'return of the child would create a substantial risk of detriment to the child's physical *or* emotional well-being' [Citations.]"  (*In re H.E.* (2008) 169 Cal.App.4th 710, 720.)  "'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child.  [Citation.] The court may consider a parent's past conduct as well as present circumstances.'"  (*In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)  We review a removal order for substantial evidence.  (*In re*

_____

correct, but Mother's arguments for why we should exercise that discretion in this case are unpersuasive.  Resolution of Mother's challenge to the section 300, subdivision (a) finding does not affect whether she is an "offending" parent versus a "non-offending" parent (contra *In re Drake M.* (2012) 211 Cal.App.4th 754, 763) and the subdivision (a) finding does not serve as the sole basis for the juvenile court's order removing Minor from her custody—there are other findings that equally support that aspect of the disposition order.

*Christopher R.* (2014) 225 Cal.App.4th 1210, 1216; see also *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011 (*O.B.*).)

Mother, by her own account, has a long history of domestic violence with Father, with some of the prior episodes she described having occurred while Minor was nearby. Despite this history, Mother took it upon herself to monitor Minor's visits with Father, and despite her awareness of Father's volatility when drinking, Mother decided to have drinks with Father at the hotel bar—with Minor in tow—on the day of the domestic violence episode specifically alleged in the dependency petition. Mother had made previous efforts to obtain a restraining order against Father, but that is not a point in her favor under these circumstances: she never followed through and she continued to have contact with Father. These facts in the record constitute substantial evidence supporting the juvenile court's conclusion that there was a substantial danger to Minor's health, safety, and well-being if he were left in Mother's care—particularly when Mother had not yet enrolled in domestic violence counseling by the time of the disposition hearing. (See, e.g., *In re J.S.* (2014) 228 Cal.App.4th 1483, 1494 ["Ongoing domestic violence, committed by both parents, in the presence of the children, from 2008 through 2012, is substantial evidence of a substantial danger to the children's emotional well-being, if not their physical well-being"], disapproved on another ground in *O.B.*, *supra*, 9 Cal.5th at 1010, fn. 7.)

### C. *Father's Statements Concerning His Possible Indian Heritage Did Not Trigger ICWA Notice Requirements*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of

Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 784.)  To comply with ICWA, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether" a child who is the subject of a section 300 petition "is or may be an Indian child . . . ."  (§ 224.2, subd. (a); see also Cal. Rules of Court, rule 5.481(a).)

Section 224.2, which helps give effect to ICWA in this state, states an appropriate inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  (§ 224.2, subd. (b).)  The same statute mandates that, after inquiry, notice must be provided to the pertinent Indian tribe(s), the Secretary of Interior, and the Bureau of Indian Affairs if there is "reason to know" a child for whom a dependency foster care placement is sought is an Indian child.  (§ 224.2, subd. (f); see also § 224.3.) There is "reason to know" a child is an Indian child if "(1) A person having an interest in the child . . . informs the court that the child is an Indian child[;] [¶] (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child[;] [¶] (5)

11

The court is informed that the child is or has been a ward of a tribal court[;] [¶] (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

Father's opening brief challenges only the Department's decision not to give notice of the proceedings to the Yaqui tribe, Secretary of Interior, and Bureau of Indian Affairs; the opening brief does not contest the adequacy of the Department's ICWA inquiry that was limited to interviewing Father.[4]  Father's statements to the Department and on his standardized ICWA form do not meet the threshold of any of the six reason to know factors in section 224.2, subdivision (d).  Notice, therefore, was not required.[5]

---

[4]     Mother challenges the adequacy of the Department's inquiry in her reply brief, but that is too late.  The point is waived.  (*In re J.N.* (2006) 138 Cal.App.4th 450, 459, fn. 5.)

[5]     The juvenile court never made an ICWA finding on the record and, as we have already highlighted, we do not decide whether the Department's ICWA inquiry was adequate.  Nothing in this opinion therefore forecloses a later challenge to a juvenile court ICWA finding predicated solely on the adequacy of that inquiry.

DISPOSITION

The juvenile court's jurisdiction finding and disposition order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.

13